UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PERRY B. MONROE, II, <br> INDIVIDUALLY AND AS <br> REPRESENTATIVE OF THE <br> ESTATE OF CHRISTOPHER T. <br> MONROE (DECEASED), <br><br> Plaintiff, <br><br> v. <br><br> ERINYS, <br> a/k/a ERINYS INTERNATIONAL, <br> a/k/a ERINYS IRAQ LTD., <br><br> Defendant. | § § § § § § § § § § § § § § § §  CIVIL ACTION NO. 4:07-cv-03528 |

### MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Dismiss (Doc. No. 6), arguing that the Court lacks personal jurisdiction and therefore must dismiss the case. After carefully considering the Motion, Plaintiff's Response (Doc. No. 15), and all applicable law, the Court finds that Defendant's Motion should be denied.

This tort action arises out of the death in Iraq of an active duty United States soldier, Christopher T. Monroe, who was allegedly struck and killed by a vehicle owned by Defendant, a multinational corporation specializing in security services. Plaintiff has filed the action in federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.

A federal district court sitting in diversity generally conducts a two-step inquiry to determine whether it has personal jurisdiction over a nonresident defendant. First, the Court must consider whether exercising jurisdiction comports with constitutional due process. If due process is met, the Court must next determine whether the forum state's

long arm statute confers personal jurisdiction. *Religious Tech. Ctr. v. Liebreich,* 339 F.3d 369, 373 (5th Cir. 2003). Because the Texas Long Arm Statute is coextensive with the limitations of due process, however, questions of personal jurisdiction in Texas are analyzed entirely within the framework of constitutional due process. *Id.*

The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a nonresident defendant when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mink v. AAAA Dev. LLC,* 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

The minimum contacts requirement can be met through contacts sufficient to confer either specific or general jurisdiction. *Cent. Freight Lines, Inc. v. APA Transp. Corp.,* 322 F.3d 376, 381 (5th Cir. 2003). Specific jurisdiction exists "[w]hen a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id.* (quotations omitted). General jurisdiction can be exercised when a defendant's contacts with the forum state are substantial, continuous, and systematic, though unrelated to the litigation. *Id.*

As a general matter, the plaintiff bears the burden of establishing personal jurisdiction over the defendant, *Gundle Lining Constr. Corp. v. Adams Col. Asphalt, Inc.,* 85 F.3d 201, 204 (5th Cir. 2004) (*citing Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985)); when the district court rules on personal jurisdiction without an evidentiary

hearing, however, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper, *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162 (5th Cir. 1985). Moreover, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (*citing D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985)).

In this case, the parties disagree over whether there is any basis for personal jurisdiction at all, either general or specific. According to Defendant, in its entire history, the corporation has had only one contact with Texas: two consecutive six-month consultancy agreements, under which a single individual employed by the consultant assisted Defendant with its business development efforts in Texas. (Affidavit of Jonathan Garratt, Doc. No. 6, Ex. A, at 2-3.) That agreement specified that the individual's duties would include such tasks as managing relationships with existing clients, developing new client relationships, assisting with the preparation of proposals for clients and projects, and so forth; it also specifically stated that the contract would not create an agency or employment relationship between Defendant and the consultant. (Attach. to Garratt Aff., Doc. No. 6, Ex. A.) Defendant also notes that the agreement was negotiated outside of Texas and is governed by English law. (Garratt Aff., Doc. No. 6, Ex. A, at 2-3.) Defendant emphasizes that its subsidiaries are all organized outside of, and have their principal places of business outside of, the United States. (Garratt Aff., Doc. No. 6, Ex. A, at 2.) It also emphasizes that, it has never had an agent, any property, or any other

indicia of doing business in the state of Texas. (Garratt Aff., Doc. No. 6, Ex. A, at 1-2.) Defendant therefore argues that specific personal jurisdiction does not attach because the consulting agreement bears no relationship to the allegedly tortious incident in Iraq that forms the basis of Plaintiff's complaint, and general jurisdiction does not attach because the consulting agreement, without more, does not satisfy the requirement of substantial, continuous, and systematic contacts with Texas.

Plaintiff, however, has offered uncontroverted evidence indicating that Defendant's contacts are significantly more extensive than Defendant suggests. Specifically, he offers multiple statements from Defendant's website claiming a physical presence in Texas. One such statement announces a "New Erinys office" in Houston, created for the purpose of "working alongside American-based energy and associated support companies, providing personnel and services across the spectrum of upstream to downstream operations, to companies operating in challenging oil and gas environments." (Pl.'s Resp., Doc. No. 15, Ex. A.) The announcement lists a Texas phone number. (Pl.'s Resp., Doc. No. 15, Ex. A.) In addition, Defendant's websites advertise that it maintains business relationships with at least one Texas-based business, Fluor Corporation, as well as two others that have a significant and ongoing presence in Texas, BP and AMEC. (Pl.'s Resp., Doc. No. 15, Exs. B, E, F.) Taken together, this evidence suggests, without specific rebuttal,[1] that Defendant's contacts with Texas are

---

[1] The Court notes that the Garratt Affidavit generally contradicts Plaintiff's claim that Defendant has had a presence in Texas. Careful reading of the affidavit, however, shows that Plaintiff's evidence has not been directly contradicted. The affidavit states that it has never had a registered agent for service of process, paid taxes, or maintained a bank account in Texas. (Garratt Aff., Doc. No. 6, Ex. A, at 2.) None of Defendant's statements include denials of having an office, an agent, or clients in Texas. The affidavit also states, "Erinys is not licensed to conduct business in Texas, and it does not have any employees, officers or directors in Texas, nor has it ever done so." (Garratt Aff., Doc. No. 6, Ex. A, at 2.) Again, this statement falls short of directly contesting Plaintiff's evidence. Therefore, Defendant is left with only its general claim that "During its entire history, Erinys has had only one connection with Texas." (Garratt Aff., Doc.

more extensive than just the consulting agreement: Defendant appears to have developed and maintained business relationships with Texas businesses, opened an office in Texas, and staffed it with personnel who appear to have been charged with the responsibility of developing and continuing Defendant's business relationships in Texas.

In light of the foregoing, the Court finds that Plaintiff has carried his burden of making a prima facie case that Defendant's contacts with Texas are substantial, continuous, and systematic, and therefore that Defendant has purposefully availed itself of the benefits and protections of Texas by establishing minimum contacts with the state. Moreover, in light of Defendant's size and activity in the state, the Court has no reason to believe that its exercise of jurisdiction will offend traditional notions of fair play and substantial justice.

Accordingly, Defendant's Motion to Dismiss (Doc. No. 6) is **DENIED WITHOUT PREJUDICE.** It is further **ORDERED** that Defendant's Motion for Protective Order (Doc. No. 17), requesting a protective order to stay discovery pending the Court's resolution of Defendant's Motion to Dismiss, is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

SIGNED at Houston, Texas, on this the 29th day of April, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.

---

No. 6, Ex. A, at 2.) Such a general statement is inadequate to rebut the specific evidence offered by Plaintiff.